IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Criminal Action No. 11-cr-00406-CMA-02

UNITED STATES OF AMERICA,

    Plaintiff,

v.

2. DANIEL SHAW,

    Defendant.

---

**ORDER GRANTING DEFENDANT'S MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE**

---

This matter is before the Court on Defendant Daniel Shaw's Motion for Early Termination of Supervised Release. (Doc. # 491.) Both the Government (Doc. # 494) and the United States Probation Office (Doc. # 492) oppose his request for early termination. For the following reasons, the Court grants Mr. Shaw's request.

## I.     BACKGROUND

On October 14, 2016, this Court sentenced Mr. Shaw to a term of imprisonment of 54 months, to be followed by a term of supervised release of three years for his conviction of Assault within the Maritime and Territorial Jurisdiction of the United States Resulting in Serious Bodily Injury, in violation of 18 U.S.C. § 113(a)(6).[1] (Doc. # 478 at

---

[1] The Court notes that this case involves a convoluted procedural history that eventually culminated into the Court's judgment and sentencing that occurred on October 14, 2016. On July 19, 2012, after a four-day jury trial, the jury returned a verdict against Mr. Shaw, finding him

1–3; Doc. # 475.) Mr. Shaw's term of imprisonment was to run consecutive to his sentence of 41 months imposed in Case No. 10-cr-00488-CMA, and his term of supervised release to run concurrent with the term of four years imposed in that same case. (Doc. # 478 at 1–3.) After he completed his term of imprisonment, he began his three-year term of supervised release on September 22, 2017. (Doc. # 492 at 1.) Both terms of supervised release are scheduled to terminate on September 22, 2021. (*Id.*)

On January 28, 2020, Mr. Shaw filed the instant request with the Court. (Doc. # 491.) He therein states that since his release from imprisonment in 2017, he has "successfully transitioned into community life," has not violated any conditions of supervised release, and has adhered completely to the requirements imposed by the Court and the Probation Office. (*Id.* at 2.) Moreover, Mr. Shaw represents that not one of his dozens of random urinalysis tests have returned with positive results for illegal

---

guilty for aggravated sexual abuse of a federal prisoner in violation of 18 U.S.C. §§ 2, 7, 2241(a)(1), and 2246(2)(C). (Doc. # 231-2; Doc. # 371.) The Court originally sentenced Mr. Shaw for this conviction to a term of imprisonment of 120 months, to be followed by a term of supervised release of four years. (Doc. # 371.) On December 18, 2012, Mr. Shaw appealed his conviction, arguing that this Court abused its discretion with respect to several evidentiary rulings. (Doc. # 372.) On March 19, 2014, the United States Court of Appeals for the Tenth Circuit affirmed his conviction. (Doc. # 430.) On June 12, 2015, Mr. Shaw moved this Court to vacate his conviction under 28 U.S.C. § 2255. (Doc. # 442.) The Court denied Mr. Shaw's habeas petition (Doc. # 451) and, on December 14, 2015, Mr. Shaw appealed that decision (Doc. # 455). Sometime thereafter, the Government and Mr. Shaw reached an agreement to resolve "Mr. Shaw's appeal and the underlying section 2255 and criminal cases." (Doc. # 465.) Pursuant to that agreement, on July 18, 2016, the parties jointly moved to vacate Mr. Shaw's conviction and sentence and, upon the vacating of that conviction and sentence, he would agree to plead guilty to the offense of Assault within the Maritime and Territorial Jurisdiction of the United States Resulting in Serious Bodily Injury. (Doc. # 465.) In light of the parties' clarification as to that agreement, the Court granted the parties' Joint Motion for Reconsideration of the Order denying Mr. Shaw's habeas petition, thereby vacating the conviction (Doc. # 471), and the Court held a hearing at which it accepted Mr. Shaw's guilty plea and immediately sentenced him for violation of 18 U.S.C. § 113(a)(6). (Doc. # 469.)

substances (*id.*), and that he has paid all of his fines and restitution (*id.* at 4; Doc. # 491-2). He asserts that he is "fully rehabilitated," and that his professional and personal life further corroborate such rehabilitation. (Doc. # 491 at 7.)

As to his professional life, Mr. Shaw has maintained steady, successful employment while on supervised release—leading to the formation of his own flooring company named Shaw Flooring, LLC. (*Id.* at 2–4, 6.) Indeed, the Account Manager of one of his former employers, N & N Tile, Inc., wrote a letter assuring this Court that Mr. Shaw's services as an employee and subcontractor reflect a man who harbors "excellent work ethics, who is punctual, precise and honest." (Doc. # 491-1 at 1.) One reason that he seeks early termination is to foster the growth and success of his company by making it easier to seize out-of-state work opportunities. (Doc. # 491 at 6.)

With respect to his personal life, Mr. Shaw has maintained a successful residence, garnering the support from his current landlady who stated that he "has turned his life around and is an inspiration to anybody he encounters." (*Id.* at 4; Doc. # 491-3.) Furthermore, he has developed a healthy relationship with Ms. Candice Anderson in which he has learned the responsibilities and values of family life and parenthood. In addition to helping raise Ms. Anderson's seven-year old daughter as his own, Mr. Shaw and Ms. Anderson had their first child together in February of 2020.[2] (Doc. # 491 at 5, 7.) He asserts that his family motivates him to stay clear of substance abuse and continue moving toward building the best possible foundation for his family.

---

[2] At the time that Mr. Shaw filed his Motion for Early Termination, he represented that he and Ms. Anderson expected their first child together in February of 2020. (Doc. # 491 at 3.) Given the date of this Order, the Court presumes that their son was born.

3

Although the Government agrees that Mr. Shaw has complied with the terms of his supervised release, it opposes his request for early termination because his compliance and accomplishments alone do not constitute "exceptional circumstances" warranting early termination. (Doc. # 494 at 4–5.) Additionally, the Government contends that Mr. Shaw's "history of violence" and conduct relating to his convictions of assault and armed robbery in another criminal matter[3] disqualify him from consideration of early termination. (*Id.* at 5.)

The Probation Office joins the Government in opposing Mr. Shaw's request for early termination based entirely on its application of the "criteria that have been approved by the Judicial Conference Committee on Criminal Law." (Doc. # 492 at 1.) The Probation Office too suggests that, due to his "history of violence," he is ineligible for a recommendation for early termination of his supervised release. (*Id.* at 1–2.)

## II.      LEGAL STANDARD

In 1984, Congress "overhauled federal sentencing procedures to make prison terms more determinate and abolish the practice of parole." *United States v. Haymond*, 139 S. Ct. 2369, 2382 (2019). In lieu of parole, "Congress established the system of supervised release. But '[u]nlike parole,' supervised release wasn't introduced to replace a portion of the defendant's prison term, only to encourage rehabilitation *after* the completion of his prison term." *Id.* (quoting United States Sentencing Commission, Guidelines Manual ch. 7, pt. A(2)(b) (Nov. 2012)) (emphasis in original) (internal

---

[3] The Court notes that Mr. Shaw has another Motion for Early Termination pending in another criminal matter, which involved his conviction for armed bank robbery. *See United States v. Shaw*, No. 10-cr-00488-CMA, Doc. ## 27, 36.

4

citations omitted). "Congress intended supervised release to assist individuals in their transition to community life." *United States v. Johnson*, 529 U.S. 53, 59 (2000). Indeed, "[s]upervised release fulfills rehabilitative ends, distinct from those served by incarceration." *Id.* (citing 18 U.S.C. § 3553(a)(2)(D); United States Sentencing Commission, Guidelines Manual §§ 5D1.3(c)–(e) (Nov. 1998); S. Rep. No. 98-225, p. 124 (1983)).

This Court has authority under 18 U.S.C. § 3583(e)(1) to terminate a term of supervised release at any time after one year of supervised release if the Court is satisfied that two requirements are met. First, early termination must be "warranted by the conduct of the defendant released." 18 U.S.C. § 3583(e)(1). Second, early termination must be in "the interest of justice." *Id.* Whether to grant a motion to terminate a term of supervised release is a matter completely at the discretion of the Court. *Rhodes v. Judisak*, 676 F.3d 931, 933 (10th Cir. 2011).

Before making a decision to terminate a defendant's supervised release, a court must consider the statutory factors[4] in 18 U.S.C. § 3553(a), *United States v. Warren*, 650 F. App'x 614, 615 (10th Cir. 2016) (citing 18 U.S.C. § 3583(e)(1)), covering the same "general punishment issues" that would be considered when imposing an initial sentence, "such as deterrence, public safety, rehabilitation, proportionality, and consistency." *United States v. Lussier*, 104 F. 3d 32, 35 (2d Cir. 1997). The Judicial Conference has elaborated on 18 U.S.C. § 3583(e)(1)'s statutory criteria and

---

[4] These statutory factors include those set forth in 18 U.S.C. § 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7). 18 U.S.C. § 3583(e).

5

recommended that the United States Probation Office and courts evaluate two sets of factors depending on how long the defendant has been on supervised release when requesting early termination. *Guide to Judiciary Policy*, Vol. 8 (Probation and Pretrial Services, Part E (Post-Conviction Supervision), § 360.20(b)–(c) (July 2, 2018).

For a defendant who requests early termination during the first 18 months of supervision, "the appropriateness of early termination must be based on the person's overall progress in meeting supervision objectives," which includes that the person (1) substantially satisfied the requirements of the court order; and (2) demonstrates a willingness and capability to remain lawful beyond the period of supervision." *Id.* § 360.20(b)(1)–(2). For a defendant who requests early termination after serving 18 or more months of supervised release, "there is a presumption in favor of recommending early termination for persons who meet the following criteria:"

(1) The person does not meet the criteria of a career drug offender or career criminal (as described in 28 U.S.C. § 994(h)) or has not committed a sex offense or engaged in terrorism;

(2) The person presents no identified risk of harm to the public or victim;

(3) The person is free from any court-reported violations over a 12-month period;

(4) The person demonstrates the ability to lawfully self-manage beyond the period of supervision;

(5) The person is in substantial compliance with all conditions of supervision; and

(6) The person engaged in appropriate prosocial activities and receives sufficient prosocial support to remain lawful well beyond the period of supervision.

*Id.* § 360.20(c)(1)–(6).

## III. DISCUSSION

### A. APPLICABLE LAW

As a threshold matter, this Court addresses the discrepancy between which of two sets of criteria should apply to its consideration of motions for early termination of supervised release, and specifically, (1) which version of the Judicial Conference's policy should guide the Probation Office and courts; and (2) whether only "exceptionally good behavior" justifies early termination of supervised release. The Court considers each question in turn.

As to the first disagreement, the Probation Office and the Government both reference the guidance criterion set forth in § 380.10(b)(1)–(9) of the Judicial Conference's guidance policy. (Doc. # 494 at 5; Doc. # 492 at 1.) However, Mr. Shaw posits that both entities rely on an outdated version of the Judicial Conference's policy regarding early termination of supervised release. (Doc. # 497 at 6–7.) Citing to the updated policy, Mr. Shaw contends that he was entitled to the "presumption *in favor of* the Probation [Office] recommending early termination of his supervised release." (Doc. # 497 at 7 (emphasis in original).)

In March 2018, the Judicial Conference adopted the recommendation of the Criminal Law Committee, and approved a "substantial revision" to its policy, entitled "Supervision of Federal Offenders (Monograph 109)." Letter from James C. Duff, Dir., Admin. Office of the U.S. Courts, Transmittal 08-040 (July 2, 2018) (on file Admin. Office of the U.S. Courts). In a letter issued to the United States District Court Judges, Magistrate Judges, Federal Public Defenders, Chief Probation Officers, Chief Pretrial

Services Officers, and Circuit Librarians, the Judicial Conference explained these revisions, several of which are pertinent to the instant Motion:

- The title of the revised policy was changed from "Supervision of Federal Offenders (Monograph 109)" to "Post-Conviction Supervision."

- While the formal guidance already included references to evidence-based practices, the revised policy explicitly establishes evidence-based practices as the overall governing framework for effective supervision.

- "Lawful self-management" was added as a goal of supervision. The term is defined as "the person's demonstrated ability to not commit a crime during the period of supervision and beyond." The revised policy further explains that the justice system cannot coerce a person to act lawfully and that "the goal for each person under supervision is lawful self-management (i.e., making personal choices not to engage in criminal behavior)."

- The current model of "controlling" and "correctional" strategies was replaced by "monitoring, restrictions and interventions."

*Id.* at 1–2. The Judicial Conference also modified the factors used to guide courts and Probation Offices in determining whether early termination is warranted.

A comparison of how these factors were modified in 2018 demonstrates the significance of these revisions. The two versions provide:

| Monograph 109, *Supervision of Federal Offenders*, § 380.10 (2017 Version) | Guide to Judiciary Policy, *Post-Conviction Supervision*, § 360.20 (2018—Present) |
|---|---|
| (1) stable community reintegration (e.g., residence, family, employment); (2) progressive strides toward supervision objectives and in compliance with all conditions of supervision; (3) no aggravated role in the offense of conviction, particularly large drug or fraud offenses; (4) no history of violence; (5) no recent arrests or convictions; (6) no recent evidence of alcohol or drug abuse; (7) no recent psychiatric episodes; (8) no identifiable risk to the safety of any identifiable victim; (9) no identifiable risk to public safety based on the Risk Prediction Index. | (1) The person does not meet the criteria of a career drug offender or career criminal (as described in 28 U.S.C. § 994(h)) or has not committed a sex offense or engaged in terrorism; (2) The person presents no identified risk of harm to the public or victim; (3) The person is free from any court-reported violations over a 12-month period; (4) The person demonstrates the ability to lawfully self-manage beyond the period of supervision; (5) The person is in substantial compliance with all conditions of supervision; and (6) The person engaged in appropriate prosocial activities and receives sufficient prosocial support to remain lawful well beyond the period of supervision. |

This comparison reflects a shift in focus from coercing a person to act lawfully to monitoring and fostering a person's ability to self-manage lawful behavior and desire to act lawfully. In light of these changes and to advance the policy underlying them, the Court will rely upon § 360.20 of the Judicial Conference's policy regarding postconviction supervision for guidance as to whether early termination is warranted.

The second dispute may be quickly resolved. The Government correctly points out that some courts hold that mere compliance with supervision does not necessitate early termination because "it is merely what is expected of all people serving terms of supervised release." (Doc. # 494 at 3–4 (quoting *Karacsonyi v. United States*, 152 F.3d 918 (Table), 1998 WL 410273, at *1 (2d Cir. 1998) (unpublished)).) As such, some of these courts require persons under supervised release to demonstrate new or "changed circumstances, such as exceptionally good behavior[,]" to justify early termination.[5] (*Id.* at 3–4 (citing *United States v. Caruso*, 241 F. Supp. 2d 466, 468 (D.N.J. 2003)).) In Mr. Shaw's Reply in Support of his Motion for Early Termination (Doc. # 497), he argues that district courts in the Tenth Circuit "have frequently granted motions for early termination of supervised release without requiring a showing of exceptional circumstances," citing 59 cases in the Tenth Circuit from 1998 to 2019. (*Id.* at 3–5 n.2.)

The Court need not look beyond its own docket to conclude that it is unnecessary for all persons under supervised release to show exceptionally good behavior to warrant early termination. This Court has frequently granted motions for early termination without making that determination. *See, e.g.*, *United States v. Puhl*, No. 18-cr-00078-CMA, Doc. # 10 (D. Colo. Feb. 27, 2020); *United States v. Lockwood*, No. 19-cr-00201-CMA, Doc. # 10 (D. Colo. Feb. 25, 2020); *United States v. Love*, No. 16-cr-00001-CMA,

---

[5] The Court disagrees with the Government's assessment that this proposition appears to be the majority rule. (Doc. # 494 at 3.) The Government cites an unpublished Second Circuit opinion, a non-binding District of New Jersey decision, a Ninth Circuit dissenting opinion, and a collection of cases from the Southern District of New York and the District of Kansas. (*Id.* at 3–4.) These citations do not support the proposition that mere compliance with supervised release is insufficient to warrant early termination absent exceptionally good behavior is a majority rule.

Doc. # 10 (D. Colo. June 28, 2019); *United States v. Turner*, No. 07-cr-00172-CMA-24, Doc. # 1740 (D. Colo. Jan. 11, 2017); *United States v. Hubbard*, No. 10-cr-00082-CMA-2, Doc. # 459 (D. Colo. May 26, 2016). In some instances, this Court is confident that, after considering the required statutory factors and the interests of justice, a person's conduct shows that he or she has been rehabilitated and is ready to assimilate into society as a good-standing citizen. In others, a person's behavior is exceptional. But by no means does 18 U.S.C. § 3583(e)(1), or the statutory factors set forth therein, constrain a court's discretion to grant early termination to only those situations in which a person has exhibited "exceptional behavior." As such, the Court declines to adopt this immutable standard now.

**B.     WHETHER EARLY TERMINATION IS WARRANTED**

After reviewing the history of this case, Mr. Shaw's instant request and corresponding exhibits, his reply brief, the responses from the Probation Office and the Government, and applicable law, the Court concludes that: (1) Mr. Shaw's behavior and conduct warrant an early termination of supervised release, and (2) that an early termination thereof is in the interests of justice. *See* 18 U.S.C. § 3583(e)(1).

First, it is undisputed that Mr. Shaw has performed admirably while on supervised release. (Doc. # 492 at 2; Doc. # 494 at 4; Doc. # 491). Indeed, he has "satisfied all conditions of supervised release and maintained compliance throughout the duration of supervision" and has never tested positive for illegal substances while on supervision. (Doc. # 492 at 2; Doc. # 491 at 2–4, 4 n.3.) He has also maintained stable

11

employment and a stable residence throughout supervision in addition to paying off all Court-ordered fines and restitution. (Doc. # 492 at 2; Doc. # 491 at 2–4; Doc. # 491-2.)

Moreover, Mr. Shaw has taken courageous strides to improve his life through the diligent pursuit of gainful employment and positive relationships with a significant other, her daughter, and, now, their family. Mr. Shaw not only has excelled in his employment with N & N Tile, Inc. and his father's company, but he also has taken the extra step of starting his own flooring company. (Doc. # 491 at 2–3, 6–7.) Starting a company requires wielding responsibilities of self-management, organization, and an unshakeable work ethic. Mr. Shaw has accepted these responsibilities and succeeded. N & N Tile, Inc. Account Manager Racheal Hall's recommendation and praise of Mr. Shaw's "excellent work ethic" (Doc. # 491-1), his reputation as "one of the top-flooring contractors in this region" (Doc. # 491-4), and other contractors' desire to hire Mr. Shaw's company are a testament to his success. (Doc. # 491 at 4.)

Additionally, Mr. Shaw's deep relationship with his partner Candice Anderson, her daughter and mother, and their newborn son demonstrates that he is motivated to remain a law-abiding citizen beyond the term of his supervised release. In fact, Mr. Shaw attributes his employment success to his desire to "provide a solid home for his family." (Doc. # 491 at 7; Doc. # 491-3; Doc. # 491-4.) This positive family relationship has also incentivized Mr. Shaw to stay away from substance abuse. (Doc. # 491 at 3.) Mr. Shaw's employment achievements, dedication to becoming a positive role model and outstanding citizen, and encouraging relationships with his family and significant

other are commendable. As a result, Mr. Shaw's behavior and conduct merit early termination of supervised release.

Furthermore, the general interests that undergird sentencing decisions will not be impeded by this early termination, especially given his "low/moderate" risk category on the Post-Conviction Risk Assessment conducted by the Probation Office. *See* (Doc. # 492 at 1.) The criteria identified by the Judicial Conference's Committee on Criminal Law also weigh in favor of early termination. To this point, the Government and the Probation Office both oppose early termination on the grounds that Mr. Shaw has a "history of violence" as reflected in his criminal record. (Doc. # 492 at 2; Doc. # 494 at 5.) However, for the reasons discussed above, this point relates to an **outdated** version of the criteria identified by the Judicial Conference. In the new version, "history of violence" is not identified as a factor; rather, one focus is on whether the person under supervision "presents no identified risk of harm to the public or victims." *Guide to Judiciary Policy*, § 360.20(c)(2). As to this factor, the Court finds that Mr. Shaw's behavior indicates that he presents no such risk of harm. Given his employment success, including starting his own business, and his relationship with family, he has demonstrated that he has the ability to "lawfully self-manage himself beyond the period of supervision" and that he has "engaged in proper prosocial activities and receives sufficient prosocial support to remain lawful well beyond the period of supervision." *Id.* § 360.20(c)(4), (6). Accordingly, the Judicial Conference's revised criteria weigh in favor of early termination.

In sum, Mr. Shaw's conduct evinces a person who has been rehabilitated and is ready to fully transition into society as a law-abiding citizen. As such, early termination is of supervised release is warranted and in the interest of justice. 18 U.S.C.§ 3583(e)(1). The Court extends its heartful congratulations to Mr. Shaw and wishes him luck as he endeavors to live a fruitful and fulfilling life.

## IV.      CONCLUSION

For the foregoing reasons, the Court ORDERS that Mr. Shaw's Corrected Motion for Early Termination of Supervised Release (Doc. # 491) is GRANTED. It is

FURTHER ORDERED that the United States Probation Office is directed forthwith to process the early termination of Mr. Shaw's supervised release.

DATED: March 5, 2020

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge